Leslie A. Cohen, Esq. (SBN: 93698)
    leslie@lesliecohenlaw.com
J'aime Williams, Esq. (SBN: 261148)
    jaime@lesliecohenlaw.com
LESLIE COHEN LAW, PC
506 Santa Monica Blvd., Suite 200
Santa Monica, CA 90401
Telephone:  310.394.5900
Facsimile:  310.394.9280


Attorneys for Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

*In re*

SANTA MARIA BREWING CO INC.

       Debtor and Debtor-in-
       Possession.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 9:20-bk-11486-DS

**DEBTOR'S CHAPTER 11 PLAN**

<u>Disclosure Statement Hearing</u>:
Date: August 24, 2021
Time: 11:30 a.m.
Place: Courtroom  201

<u>Plan Confirmation Hearing</u>:
Date:  TBD
Time:
Place: Courtroom  201

1

## TABLE OF CONTENTS

2

**Page**

3

4

I. INTRODUCTION ........................................................................................................ 1

II. CLASSIFICATION AND TREATMENT OF CLAIMS ............................................. 2

5

6

    A.    What Creditors and Interest Holders Will Receive Under The Plan ................................................................................................................ 2

7

    B.    Unclassified Claims ............................................................................... 2

8

        1.    Administrative Expenses ........................................................... 2

9

    C.    Priority Tax Claims ................................................................................ 4

10

    D.    Classified Claims and Interests ............................................................ 7

11

        1.    Classes of Secured Claims ...................................................... 7

12

        2.    Classes of Priority Unsecured Claims ..................................... 9

13

        3.    Classes of General Unsecured Claims .................................. 10

14

        4.    Class of Interest Holders ........................................................ 11

15

    E.    Means of Effectuating the Plan ........................................................... 12

16

        1.    Funding for the Liquidating Plan ............................................. 12

17

        2.    Post-Confirmation Management of the Estate ........................ 13

18

        3.    Disbursing Agent .................................................................... 14

19

        4.    Objections to Claims ............................................................... 14

20

        5.    Post-Confirmation Adversary Proceedings ............................ 15

21

        6.    Distributions to be Made Pursuant to the Plan ...................... 15

22

    F.    Exculpations and Releases ................................................................ 16

23

    G.    Injunctions .......................................................................................... 17

24

    H.    Other Provisions ................................................................................. 18

25

        1.    Executory Contracts and Unexpired Leases ......................... 18

26

            a.    Assumptions ................................................................ 18

27

            b.    Rejections .................................................................... 18

28

1

## TABLE OF CONTENTS (cont.)

2

                                                                                    **Page**

3

     2.     Changes in Rates Subject to Regulatory Commission

4

          Approval ........................................................................................... 18

5

     3.     Retention of Jurisdiction ................................................................. 18

6

     4.     Tax Consequences of Plan .............................................................. 20

7

III. EFFECT OF CONFIRMATION OF PLAN .......................................................... 21

8

    A.    Discharge ........................................................................................ 21

9

    B.    Vesting of Title ............................................................................... 22

10

    C.    Retention and Enforcement of Claims ............................................ 23

11

    D.    Default ............................................................................................. 23

12

    E.    Modification of Plan ....................................................................... 23

13

    F.    Post-Confirmation Causes of Action ............................................. 24

14

    G.    Post-Confirmation Status Report .................................................... 24

15

    H.    Post-Confirmation Conversion/Dismissal ..................................... 25

16

    I.    Post-Confirmation U.S. Trustee Fees ............................................. 25

17

    J.    Final Decree .................................................................................... 25

18

19

20

21

22

23

24

25

26

27

28

# I. INTRODUCTION

Santa Maria Brewing Co Inc. is the debtor and debtor-in-possession (the "**Debtor**") in the above-captioned Chapter 11 bankruptcy case (the "**Case**").  On December 15, 2021 (the "**Petition Date**"), the Debtor commenced the Case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101 *et seq*.  This document is the Debtor's Chapter 11 plan of Reorganization (the "**Plan**") proposed by the Debtor.  Sent to you in the same envelope as this document is the Disclosure Statement which has been approved by the Court, and which is provided to help you understand the Plan.  Chapter 11 allows the Debtor, the creditors and other parties in interest to propose a plan of reorganization.  A plan of reorganization may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  The Debtor currently manages and operates its affairs as a debtor-in-possession per Sections 1107 and 1108 of the Bankruptcy Code.

The Plan is an operating chapter 11 plan of reorganization.  In other words, the Debtor has proposed the Plan to continue operations, utilize plan financings and to timely pay Debtor's creditors as overseen by the Court.  The Debtor will fund the Plan from the following sources: (1) ongoing income generated from operations; (2) $1.5 million in plan financing being obtained from third parties; (3) $500,000 contribution from President and equity holder Byron Moles; and (4) any other cash available on the Effective Date of the Plan (collectively, the "**Assets**").  The above sources shall also be referred to herein as the "**Plan Funds**."  All payments required to be paid on the Effective Date of the Plan, as that term is defined herein below, will be made from the Plan Funds.

THE PROPOSED EFFECTIVE DATE OF THE PLAN (THE "**EFFECTIVE DATE**") IS DECEMBER 15, 2021, ASSUMING THERE HAS BEEN NO APPEAL FROM, OR ORDER STAYING THE EFFECTIVENESS OF, THE ORDER OF THE COURT CONFIRMING THE PLAN (the "**CONFIRMATION ORDER**").  The Debtor, following the Effective Date, will be referred to as the Reorganized Debtor.

This Plan includes the following exhibits:

1    *Exhibit A* - the claims against the Debtor, including but not limited to those claims

2    whose treatment is explained in detail below*,* proofs of claim filed in this case, and claims

3    which have been satisfied during the course of this bankruptcy case, if any.

4    *Exhibit B* - a list of Class 8 hybrid claimants, their investment amount and Stock

5    ownership amounts, as scheduled by the Debtor for each claimant, and if such claimant

6    has filed a proof of claim, the proof of claim amounts.

7    *Exhibit C* - a list of all stockholders, the number of shares held by each, and, if

8    applicable, designation as a Class 8 hybrid claimant.

9    **II.  CLASSIFICATION AND TREATMENT OF CLAIMS**

10   **A.    What Creditors and Interest Holders Will Receive Under The Plan**

11   As required by the Bankruptcy Code, the Plan classifies claims and interests in

12   various classes according to their right to priority.  The Plan states whether each class of

13   claims or interests is impaired or unimpaired.  The Plan provides the treatment each class

14   will receive.

15   *Exhibit "A"* shows the claims against the Debtor, including but not limited to those

16   claims whose treatment is explained in detail below*,* proofs of claim filed in this case, and

17   claims which have been satisfied during the course of this bankruptcy case.  Some of

18   these claims may be subject to claims objections filed by the Debtor or the Reorganized

19   Debtor.

20   **B.    Unclassified Claims**

21   Certain types of claims are not placed into voting classes; instead they are

22   unclassified.  They are not considered impaired and they do not vote on the Plan because

23   they are automatically entitled to specific treatment provided for them in the Bankruptcy

24   Code.  As such, the Debtor has not placed the following claims in a class:

25   **1.    Administrative Expenses**

26   Administrative expenses are claims for costs or expenses of administering the

27   Case that are allowed under Bankruptcy Code §507(a)(2).  The Bankruptcy Code requires

28

that all administrative claims be paid on the Effective Date unless a particular claimant

agrees to a different treatment.

The following chart lists all of the Debtor's § 507(a)(2) administrative claims and

their treatment under the Plan:

| Name | Amount Owed | Treatment |
|------|-------------|-----------|
| Clerk's Office Fees | $0 (estimated) | Paid in full on the Effective Date. |
| Office of the U.S. Trustee Fees | $0 (estimated) | Paid in full on the Effective Date. |
| Leslie Cohen Law, PC ("LCL") | $50,000 (estimated net of retainer and Court approved post-petition payments) | LCL has exhausted the retainer.  All LCL fees and costs are to be paid in full not later than the Effective Date.  If LCL is still counsel of record after confirmation, all post-confirmation attorneys' fees shall be paid current on a monthly basis without need for further application to the Court. |
| Crone Law Group ("Crone") | $10,000 (estimated net of retainer and any Court approved post-petition payments) | Crone estimates it will have exhausted its retainer by the Effective Date.  All LCL fees and costs are to be paid in full not later than the Effective Date.  If Crone is still counsel of record after confirmation, all post-confirmation attorneys' fees shall be paid current on a monthly basis without need for further application to the Court. |
| Employment Development Dept. Admin Claim | $9,894.48 | Paid in full prior to Effective Date |

Court Approval of Fees Required:

The Court must rule on all fees listed in this chart before the fees will be owed by

the Debtor.  For all fees except Clerk's Office fees and U.S. Trustee's fees, the

professional in question must file and serve a properly noticed fee application and the

Court must rule on the application.  Only the amount of fees allowed by the Court will be

owed and required to be paid under this Plan.

Except as otherwise provided in the Plan, requests for payment of administrative

claims (other than professional fees and expenses) must be filed and served on the

Debtor (or Reorganized Debtor), its counsel, and the U.S. Trustee no later than thirty (30)

days after the Effective Date.  All such requests for payment of administrative claims and

applications for final allowance of compensation and reimbursement of expenses will be

subject to the authorization and approval of the Bankruptcy court.  Holders of

administrative claims (except for professionals) requesting compensation or

1  reimbursement of expenses that do not file such requests by the administrative claims bar

2  dates noted above will be forever barred from asserting such claims.  No further notice of

3  the administrative claims bar dates noted above will be given.

4  **C.**    **Priority Tax Claims**

5          Priority tax claims are certain unsecured income, employment and other taxes

6  described by Bankruptcy Code §507(a)(8).  The Bankruptcy Code requires that each

7  holder of such a §507(a)(8) priority tax claim receive the present value of such claim in

8  deferred cash payments, over a period not exceeding six years from the date of the

9  assessment of such tax.

10         The following chart lists all of the Debtor's estimated §507(a)(8) priority tax claims

11  and their treatment under the Plan; however, this estimated list is still under review and

12  subject to adjustment upon objections to claims or other proceedings and/or negotiations.

| DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| Internal Revenue Services<br><br>Proof of Claim Priority Amount: $982,087.66 (Proof of Claim No. 14-2).<br><br>Proposed Allowed Priority Amount: $982,087.66 | No | No | Allowed claim will be paid as follows:<br><br>1) Tax claimant will receive their pro rata share of $500,000 allocated for priority tax claims on the Effective Date<br><br>2) the balance of the claim will be paid in amortized quarterly installments of principal and interest with interest at the Federal Rate of .25% over 4 years commencing on January 15, 2022, and with the final payment on October 15, 2025. |
| Employment Development Dept.<br><br>Proof of Claim Amount: $149,250.05 (Proof of Claim No. 15). | No | No | Allowed claim will be paid as follows:<br><br>1) Tax claimant will receive their pro rata share of $500,000 |

| DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| Proposed Allowed Priority Amount: $149,250.05 | | | allocated for priority tax claims on the Effective Date<br><br>2) the balance of the claim will be paid in amortized quarterly installments of principal and interest with interest at the Federal Rate of .25% over 4 years commencing on January 15, 2022, and with the final payment on October 15, 2025. |
| San Luis Obispo County Tax Collector<br><br>Proof of Claim Priority Amount: $5,576.08 (Proof of Claim No. 27).<br><br>Proposed Allowed Priority Amount: $5,576.08 | No | No | Allowed claim will be paid as follows:<br><br>1) Tax claimant will receive their pro rata share of $500,000 allocated for priority tax claims on the Effective Date<br><br>2) the balance of the claim will be paid in amortized quarterly installments of principal and interest with interest at the Federal Rate of .25% over 4 years commencing on January 15, 2022, and with the final payment on October 15, 2025. |
| Santa Barbara County Tax Collector<br><br>Proof of Claim Priority Amount: $12,248.52 (Proof of Claim No. 40).<br><br>Proposed Allowed Priority Amount: $12,248.529 | No | No | Allowed claim will be paid as follows:<br><br>1) Tax claimant will receive their pro rata share of $500,000 allocated for priority tax claims on the Effective Date<br><br>2) the balance of the claim will be paid in amortized quarterly installments of principal and interest with |

5

| DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| | | | interest at the Federal Rate of .25% over 4 years commencing on January 15, 2022, and with the final payment on October 15, 2025. |
| CA Dept of Tax and Fee Sales Tax and Manufacturing Tax<br><br>Proof of Claim Priority Amount: $252,714.43 (Proof of Claim No. 59).<br><br>Proposed Allowed Priority Amount: $252,714.43 | No | No | Allowed claim will be paid as follows:<br><br>1) Tax claimant will receive their pro rata share of $500,000 allocated for priority tax claims on the Effective Date<br><br>2) the balance of the claim will be paid in amortized quarterly installments of principal and interest with interest at the Federal Rate of .25% over 4 years commencing on January 15, 2022, and with the final payment on October 15, 2025. |
| Franchise Tax Board<br><br>Proof of Claim Priority Amount: $1,697.54 (Proof of Claim No. 5).<br><br>Proposed Allowed Priority Amount: $1,697.54 | | No | Allowed claim will be paid as follows:<br><br>1) Tax claimant will receive their pro rata share of $500,000 allocated for priority tax claims on the Effective Date<br><br>2) the balance of the claim will be paid in amortized quarterly installments of principal and interest with interest at the Federal Rate of .25% over 4 years commencing on January 15, 2022, and with the final payment on October 15, 2025. |

6

| DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| US Department of Treasury Alcohol and Tobacco Tax and Trade Bureau<br><br>Proof of Claim Priority Amount: $7,498.8 (Proof of Claim No. 61).<br><br>Proposed Allowed Priority Amount: $7,498.8 | | No | Allowed claim will be paid as follows:<br><br>1) Tax claimant will receive their pro rata share of $500,000 allocated for priority tax claims on the Effective Date<br><br>2) the balance of the claim will be paid in amortized quarterly installments of principal and interest with interest at the Federal Rate of .25% over 4 years commencing on January 15, 2022, and with the final payment on October 15, 2025. |

## D.    Classified Claims and Interests

### 1.    Classes of Secured Claims

Secured claims are claims secured by liens against assets of the estate.  The following chart identifies the Plan's treatment of all the classes containing all of the Debtor's secured claims.

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured Claim of Internal Revenue Service<br><br>Secured Claim Amount: $820,703.07 (Claim No. 14-2)<br><br>Proposed Allowed Secured Claim Amount: $820,703.07<br><br>Secured by: Tax lien | No | No | Allowed secured claim will be paid as follows: Amortized quarterly installments of principal and interest with interest at the Federal Rate of .25% over 4 years commencing on January 15, 2022, with the final payment on October 15, 2025. |
| 2 | Michael & Marrianne | No | Yes | Allowed secured claim |

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | McCormick<br><br>Secured Claim Amount: $409,240.86; (Proof of Claim No. 41).<br><br>Proposed Allowed Secured Claim Amount: $409,240.86.<br><br>Secured by UCC-1 | | | will be paid as follows:<br><br>Creditor will be paid $1,000 per month for 48 months starting on the Effective Date, without interest. At the end of 48 months, Creditor will have the option of receiving a balloon payment for the balance due of $361,240.86, or converting the balance due into equity. |
| 3 | Michael & Marrianne McCormick<br><br>Secured Claim Amount: $10,000;<br><br>Proposed Allowed Secured Claim Amount: $10,000.<br><br>Secured by 2003 Dodge Truck | No | Yes | Allowed secured claim will be paid as follows:<br><br>Creditor will be paid $200 per month for 50 months starting on the Effective Date, without interest. |
| 4 | Associated Winery Systems, Inc.<br><br>Secured Claim Amount: $102,727.74; (Proof of Claim No. 16).<br><br>Proposed Allowed Secured Claim Amount: $102,727.74.<br><br>Secured by Equipment | No | Yes | Allowed secured claim will be paid as follows:<br><br>Creditor will be paid $1,000 per month for 102 months starting on the Effective Date, (without interest) with a final payment due of $727.74 due in month 103. |
| 5 | San Luis Obispo County Tax Collector<br><br>Secured Claim Amount: $9.381.92; (Proof of Claim No. 27).<br><br>Proposed Allowed Secured Claim Amount: $9.381.92.<br><br>Secured by Tax Lien | No | Yes | Allowed secured claim will be paid as follows: Amortized quarterly installments of principal and interest with interest at the Federal Rate of .25% over 4 years commencing on January 15, 2022, and with the final payment on October 15, 2025. |

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 6 | Alpha Capital<br><br>Secured Claim Amount: $135,047.94; (Proof of Claim No. 22).<br><br>Proposed Allowed Secured Claim Amount: $0.00. | | Impaired, but only if claim allowed by Court. | Objection is pending. To the extent any claim is allowed, Alpha Capital's disputed claim is included in Class 9. |

**2.   Classes of Priority Unsecured Claims**

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows:  the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

Debtor has no priority unsecured claims.

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 7 | Bertao Vaz Living Trust (sole asserted non-tax priority claimant)<br><br>Alleged Priority Claim Amount: $29,500; (Proof of Claim No. 42).<br><br>Proposed Allowed Priority Claim Amount: Up to $13,650 permitted by 11 U.S.C. §507(a)(4)<br><br>[Objection to Claim No. 42 is pending] | No | No | The Debtor has objected to Claim No. 42, including the amount included as priority.  See Docket No. 109.  Debtor's records indicate there is no basis for claimant's priority wage claim and believes it will be disallowed in full.  However, even if allowed, priority wage claims are capped at $13,650 pursuant to 11 U.S.C. § 650.  Accordingly, to the extent any priority wage claim for claimant is deemed allowed by the Court, the Debtor will pay it in cash in full on the Effective Date. |

**3.**     **Classes of General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under

Bankruptcy Code §507(a).  The following chart identifies the Plan's treatment of the

classes of the Debtor's general unsecured claims:

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 8 | Timely-filed and scheduled hybrid unsecured claims<br><br>Total amount of allowed hybrid unsecured claims = $3,419,101.86).<br><br>• See *Exhibit "B"* for a list of hybrid claimants, their investment amount and Stock ownership, as scheduled by the Debtor for each claimant, and if such claimant has filed a proof of claim, the proof of claim amounts. | No | Impaired. Claims in this Class are entitled to vote on the Plan. | Each of the hybrid unsecured claimants entered into a pre-petition Investor Financing Agreement with the Debtor, under which claimants invested an amount with the Debtor ("**Investment**") in return for common stock in the Debtor ("**Stock**"), as well as rights to receive quarterly returns, royalties, late charges, and default interest on their investment ("**Fees and Charges**").<br><br>Each allowed hybrid unsecured creditor will receive the option to elect one of the following treatments:<br>1) to retain their Stock and equity position in the Debtor, and waive any and all rights to receive payment of Fees and Charges which have been incurred or will be incurred, as their "new value" contribution under the Plan and will receive $0 on their unsecured claim; or<br>2) to relinquish their Stock, and have their full claim (Investment and Fees and Charges) included in and paid in accordance with the treatment of Class 9 General Unsecured Claims |
| 9 | Timely-filed and scheduled general unsecured claims<br><br>Range of total amount of allowed unsecured claims = $7,572,127.02 - $11,046,228.87 (depending on | No | Impaired. Claims in this Class are entitled to vote on the Plan. | Each allowed general unsecured creditor will receive their pro rata share of $1,000,000 on the Effective Date, resulting in an estimated payout of between 9.05% to 13.21%, depending on elections made by Class 8 claimants. Additionally, there are multiple objections to Class 9 claims pending, which may result in a reduced amount of unsecured |

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | elections made by Class 8). <br><br> • See *Exhibit "A"* for a list of claimants and amount scheduled by the Debtor for each claimant, and if such claimant has filed a proof of claim, the proof of claim amount. | | | claims and an even higher percentage payout to Class 9 creditors. |

**4.**     **Class of Interest Holders**

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor. If the debtor is a corporation, entities holding preferred or common stock in the debtor are the interest holders. If the debtor is a partnership, the interest holders include both general and limited partners. The following chart identifies the Plan's treatment of the class of Interest Holders.

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 10 | <u>All common stock holders</u> <br><br> • See *Exhibit "C"* for a list of all stock holders, the amount of shares held by each, and, if applicable, designation as a Class 8 hybrid claimant. | Yes | <u>Impaired; claims in this class are not entitled to vote on Plan; class is deemed to have accepted Plan.</u> | Each member of this class will retain his or her interest in the Reorganized Debtor but will not be allowed to take any distributions until all secured and unsecured claims are paid all payment due under the Plan. <br><br> Byron Moles is making a new value contribution of $500,000 on the Effective Date on behalf of all stockholders. <br><br> In addition, any Class 8 hybrid claim holder who elects to retain their Stock and equity position in the Debtor, will be waiving their rights to receive Fees and Charges due under their agreements with the Debtor as their additional new value contribution. |

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|---------------|----------------|-----------|
|         |             |               |                |           |

Notwithstanding any other provision of the Plan, no payments or distributions shall be made on account of any disputed claim or disputed interest until such claim or interest becomes an allowed claim or allowed interest, and then only to the extent it becomes an allowed claim or allowed interest. Any proof of claim or proof of interest filed which differs from the scheduled amount is deemed to be a disputed claim or disputed interest, unless the amount of the proof of claim or interest is listed as the allowed claim above.

**E.    Means of Effectuating the Plan**

    **1.    Funding for the Liquidating Plan**

The Plan will be funded with the Plan Funds (as defined above, Section I).  The Debtor will fund the Plan from the following sources: (1) ongoing income generated from operations; (2) $1.5 million in plan financing being obtained from third parties; (3) $500,000 contribution from President and equity holder Byron Moles and (4) any other cash available on the Effective Date of the Plan.

The $1.5 million Plan financing ("**Plan Financing**") is being provided as an unsecured loan by Michael McCormick.  Mr. McCormick is a secured creditor of the estate.  See Classes 2 and 3.

Upon entry of the Confirmation Order, Mr. McCormick will transfer the Plan Financing to the Debtor, so that it is available on or before the Effective Date.

Repayment of the Plan Financing will be on the following terms: the Debtor will make monthly 10% interest only payments for 60 months commencing on the Effective Date. At the end of 60 months, Mr. McCormick will have the option of receiving a balloon payment for the principal balance due, or converting the principle balance due into equity.

1    As discussed in further detail below, upon entry of the Confirmation Order, the

2   Reorganized Debtor shall be vested with the right to review and investigate all filed claims

3   and file any further objections thereto, except those claims that the Debtor has filed

4   objections to, and/or settled, compromised or otherwise resolved by the entry of Court

5   order on or before the entry of the Confirmation Order.  The distribution to any

6   objectionable claims in <u>Class 9</u> shall take place 15 calendar days after the entry of a Court

7   order resolving the last objection to claim.

8            **2.    <u>Post-Confirmation Management of the Estate</u>**

9    The Debtor's retained professionals at the time of confirmation shall be deemed

10   employed by the Debtor post-confirmation without the need for further order of the Court

11   and shall be paid in the ordinary course.

12    The Debtor's professionals shall be allowed to seek payment of reasonable fees

13   and expenses from the Plan Funds or third-parties, following the entry of the Confirmation

14   Order, pursuant to the procedure discussed below.

15    Any professional for the Debtor seeking compensation and reimbursement of

16   expenses for services rendered after entry of the Confirmation Order shall be paid as

17   billed in the ordinary course of the Debtor's post-petition activities.  If for any reason a

18   professional's billing remains unpaid for 21 days after service on the Debtor, he/she may

19   apply to the Court for an order approving payment.

20    The Reorganized Debtor shall have exclusive authority to oversee the

21   disbursement of the cash from the estate pursuant to the terms of the Plan.

22    The Reorganized Debtor shall have sole and absolute discretion over whether to

23   prosecute, settle or take action with respect to any and all claims of the estate, including

24   but not limited to avoidance actions or, any post-confirmation estate claims. The Debtor as

25   Disbursing Agent shall exercise its reasonable business judgment in determining whether

26   to prosecute, settle or take action regarding any and all claims of the estate, including but

27   not limited to avoidance actions and the post-confirmation estate claims.  The Disbursing

28   Agent may compromise or settle any all claims of the estate, including but not limited to

1  avoidance actions and post-confirmation estate claims. The Disbursing Agent shall be

2  entitled to retain and pay counsel to prosecute, settle, investigate any objections to claims,

3  avoidance actions or post-confirmation estate claims without further notice, hearing or

4  Court order.  Additionally, nothing herein should be construed to exclude Debtor's and a

5  creditor's option to pay a creditor off early if mutually agreed upon by the creditor and the

6  Debtor.

7      **3.**    **Disbursing Agent**

8      The Debtor shall serve as the Disbursing Agent under the Plan.

9      The disbursing agent's address and telephone number are:

10
11
12
13
    Santa Maria Brewing Co Inc.
    c/o Leslie Cohen Law PC
    Attn: J'aime Williams
    506 Santa Monica Blvd. #200
    Santa Monica, CA 90401
    (310) 394-5900

14      **4.**    **Objections to Claims**

15      After the Effective Date, the Reorganized Debtor shall be vested with the right to

16  object to claims except those claims that have been objected to, settled, compromised or

17  otherwise resolved prior to Confirmation.  Unless the Court orders otherwise, upon motion

18  of the Reorganized Debtor, the last day to file such objections is 180 days after entry of a

19  final confirmation order (or, if such day falls on a weekend or holiday, the next business

20  day thereafter) (the "**Claims Objection Deadline**").  After the Effective Date, the

21  Reorganized Debtor will have the right and standing to object to any claims, whether or

22  not such claims are listed as disputed in ***Exhibit "A".***

23      The Reorganized Debtor shall have the right to settle or compromise any

24  objections to claims not already settled or resolved, pursuant to the procedure established

25  in Local Bankruptcy Rule (LBR) 9013-1(g), except that notice of the proposed settlement

26  or compromise shall be provided to the Debtor, the twenty largest unsecured creditors,

27  creditors committee (if any), those parties requesting special notice, and the OUST.  If no

28

objection to a claim is filed by the Claims Objection Deadline, that claim is deemed allowed.

As provided by 11 U.S.C. § 502(c) of the Bankruptcy Code, the Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of the Plan, if impaired claims are found to exist by the Court.  The Court shall retain jurisdiction over the Debtor, the Reorganized Debtor, and the Bankruptcy Case (until entry of a final decree and order closing the case) to resolve such objections to claims following the confirmation of the Plan, if necessary.

Nothing contained in the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any rights of setoff or recoupment, or of any defense, it may have with respect to any claim.

**5.**      **Post-Confirmation Adversary Proceedings**

Upon entry of the Confirmation Order, the Reorganized Debtor shall be vested with the right and standing to commence any adversary proceedings under Bankruptcy Code Sections 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, and 553 (collectively, "Avoidance Actions"), except such adversary proceedings as have been commenced and/or resolved by the Debtor prior to entry of the Confirmation Order.  The Reorganized Debtor shall be required to commence any Avoidance Actions or other adversary proceedings by no later than 2 years after the Petition Date (or, if such day falls on a weekend or holiday, the next business day thereafter).  The Reorganized Debtor and the Debtor shall have the right to settle or compromise any Avoidance Actions and other adversary proceedings pursuant to the procedure established in LBR 9013-1(g), except that notice of the proposed settlement or compromise shall be provided to the twenty largest unsecured creditors, those parties requesting special notice,  the creditors committee (if any), the Reorganized Debtor, and the OUST.

**6.**      **Distributions to be Made Pursuant to the Plan**

Distributions shall be made by the Disbursing Agent in accordance with the Plan. The distributions to be made under the Plan shall be made by check drawn on a domestic

1  bank or by wire transfer, at the sole election of the Reorganized Debtor and/or Disbursing
2  Agent.

3      Except as otherwise agreed to in writing by the Reorganized Debtor, and the
4  affected claimant, distributions to be made to holders of allowed claims pursuant to the
5  Plan may be delivered by regular mail, postage prepaid, to the address shown in the
6  Debtor's schedules, as they may from time to time be amended in accordance with
7  Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly filed with
8  the Court, then to such address.

9      Checks issued by the Disbursing Agent to pay allowed claims shall be null and void
10  if not negotiated within ninety (90) days after the date of issuance thereof.  Any claim
11  holder which fails to timely negotiate its check(s) shall be deemed to have forfeited such
12  unclaimed property.  After such date, the unclaimed property held on account of such
13  voided check or such claim shall revest in the Reorganized Debtor free and clear of all
14  claims and interests, subject to redistribution under the terms of the Plan, excluding any
15  claim holder(s) who forfeited unclaimed property.

16      Notwithstanding any other provision in the Plan, the Reorganized Debtor shall not be
17  required to make a cash distribution on any allowed claim if the distribution thereon is less
18  than five dollars ($5.00).

19      In connection with the Plan and any instruments issued in connection therewith, the
20  Reorganized Debtor shall comply with all applicable withholding and reporting
21  requirements imposed by any federal, state or local taxing authority, and all distributions
22  under the Plan shall be subject to any such withholding or reporting requirements.

23  **F.**    **Exculpations and Releases**

24      To the maximum extent permitted by law, neither the Debtor, the Reorganized
25  Debtor, nor any of its employees, agents, representatives, or retained professionals,
26  whether or not by Bankruptcy Court Order (each, an "**Indemnified Person**"), shall have or
27  incur liability to any person or entity for an act taken or omission made in good faith in
28  connection with or related to the formulation of the Plan, the Disclosure Statement, or a

contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein. Each Indemnified Person shall in all respects be entitled to reasonably rely on the advice of counsel with respect to its duties and responsibilities under the Plan.

**G.    Injunctions**

The Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, or terminated pursuant to the Plan.

Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability, or an interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan, are permanently enjoined from taking any of the following actions against the Debtor, the Estate, the Reorganized Debtor, or their property on account of any such claims, debts or liabilities or terminated interests or rights:  (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan, including adversary proceedings in this bankruptcy case.

By accepting distribution pursuant to the Plan, each holder of an allowed claim or allowed interest receiving distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this Section.

**H.    Other Provisions**

    **1.    Executory Contracts and Unexpired Leases**

        **a.    Assumptions**

The Debtor is assuming the following executory contracts and leases, and making cure payments on the Effective Date as follows:

| CREDITOR | DESCRIPTION | EFFECTIVE DATE CURE PAYMENT |
|---|---|---|
| Double Eagle Investments | Real property lease: 7935 San Luis Ave, Atascadero, CA 93422 | $103,872.41 |
| Equity Trust Co fbo Larry Price | Real property lease (storage): 7625 San Luis Ave, Atascadero, CA 93422 | $12,722.00 |
| Keg Logistics | Equipment lease | $62,294.00 |
| Don Sylvester | Real property lease (storage): 823 W. Knudsen Way, Santa Maria, CA | None |
| Darrell & Mary Anderson | Real property lease (storage): 7930 El Camino, Atascadero, CA 93422 | None |

        **b.    Rejections**

The Debtor is not rejecting any executory contracts or unexpired leases.

    **2.    Changes in Rates Subject to Regulatory Commission Approval**

The Debtor is not subject to governmental regulatory commission approval of its rates.

    **3.    Retention of Jurisdiction**

After confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible including for the following purposes:

a.    To resolve any and all disputes regarding the operation and interpretation of the Plan and the Confirmation Order;

1       b.     To determine the allowability, classification, or priority of claims and interests

2 upon objection by the Debtor, Reorganized Debtor, or by other parties in interest with

3 standing to bring such objection or proceeding;

4       c.     To determine (to the extent necessary) the extent, validity and priority of any

5 lien asserted against property of the Debtor or property of the Debtor's estate.

6       d.     To construe and take any action to enforce the Plan, the Confirmation Order,

7 and any other order of the Court, issue such orders as may be necessary for the

8 implementation, execution, performance, and consummation of the Plan, the Confirmation

9 Order, and all matters referred to in the Plan, the Confirmation Order, and to determine all

10 matters that may be pending before the Court in this case on or before the Effective Date

11 with respect to any person or entity related thereto, including without limitation motions to

12 dismiss or convert;

13       e.     To determine (to the extent necessary) any and all applications for

14 allowance of compensation and reimbursement of expenses of professionals for the

15 period on or before the Effective Date;

16       f.     To determine any request for payment of administrative expenses, if not

17 previously resolved;

18       g.     To determine all applications, motions, adversary proceedings, contested

19 matters, and any other litigated matters instituted during the pendency of this case

20 whether before, on, or after the Effective Date;

21       h.     To determine such other matters and for such other purposes as may be

22 provided in the Confirmation Order;

23       i.     To modify the Plan under Section 1127 of the Bankruptcy Code in order to

24 remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in

25 the Plan so as to carry out its intent and purpose;

26       j.     Except as otherwise provided in the Plan or the Confirmation Order, to issue

27 injunctions to take such other actions or make such other orders as may be necessary or

28

1  appropriate to restrain interference with the Plan or the Confirmation Order, or the

2  execution or implementation by any person or entity of the Plan or the Confirmation Order;

3       k.     To issue such orders in aid of consummation of the Plan or the Confirmation

4  Order, notwithstanding any otherwise applicable non-bankruptcy law, with respect to any

5  person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy

6  Rules; and

7       m.     To enter a final decree and order closing this Case.

8  **4.**    **Tax Consequences of Plan**

9  CREDITORS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX

10  LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS

11  AND/OR ADVISORS.

12  The following disclosure of possible tax consequences is intended solely for the

13  purpose of alerting readers about possible tax issues the Plan may present to the Debtor.

14  The Debtor CANNOT and DOES NOT represent that the tax consequences

15  contained below are the only tax consequences of the Plan because the Tax Code

16  embodies many complicated rules which make it difficult to state completely and

17  accurately all the tax implications of any action on Debtor's tax liability. The following are

18  the tax consequences which the Plan will have on the Debtor's tax liability:

19  DUE TO THE UNSETTLED AND COMPLEX NATURE OF SOME OF THE TAX

20  ISSUES, AS WELL AS THE POSSIBILITY THAT DEVELOPMENTS SUBSEQUENT TO

21  THE DATE HEREOF COULD AFFECT THE TAX CONSEQUENCES OF THE PLAN,

22  THE FOLLOWING DISCUSSION SHOULD NOT BE REGARDED AS DEFINITIVE OR AS

23  COVERING ALL POSSIBLE TAX CONSEQUENCES. ADDITIONALLY, THIS SUMMARY

24  DOES NOT DISCUSS ALL ASPECTS OF FEDERAL INCOME TAXATION THAT MAY

25  BE RELEVANT TO A PARTICULAR CREDITOR OR HOLDER OF AN EQUITY

26  INTEREST IN LIGHT OF ITS INDIVIDUAL CIRCUMSTANCES OR TO CERTAIN

27  CREDITORS AND HOLDERS OF EQUITY INTERESTS SUBJECT TO SPECIAL

28  TREATMENT UNDER THE FEDERAL INCOME TAX LAWS (FOR EXAMPLE, LIFE

1  INSURANCE COMPANIES, TAX-EXEMPT ORGANIZATIONS, FOREIGN

2  CORPORATIONS AND INDIVIDUALS WHO ARE NOT CITIZENS OR RESIDENTS OF

3  THE UNITED STATES).

4      THIS SUMMARY DOES NOT DISCUSS ANY ASPECT OF STATE, LOCAL OR

5  FOREIGN TAXATION. HOLDERS OF CLAIMS ARE STRONGLY URGED TO CONSULT

6  WITH THEIR OWN TAX ADVISORS AS TO THE SPECIFIC TAX CONSEQUENCES

7  (FEDERAL, STATE, LOCAL, AND FOREIGN) TO THEM OF THE PLAN.

8      This summary is based upon the laws, regulations, rulings, and decisions in effect

9  on the date hereof and upon certain proposed and temporary regulations, all of which are

10 subject to change (possibly with retroactive effect) by legislation, administrative action or

11 judicial decision.

12     Moreover, due to a lack of definitive judicial or administrative authority and

13 interpretation, substantial uncertainties exist with respect to various tax consequences of

14 the Plan as discussed herein. No rulings have been or are expected to be requested from

15 the IRS or any state tax agency concerning any of the tax matters described herein. There

16 can be no assurance that the IRS or any state tax agency will not challenge the positions

17 taken by the Debtor with respect to any of the issues addressed herein or that a court of

18 competent jurisdiction would not sustain such a challenge.

19     The amount of tax liabilities, if any, will be affected by any deductions the Debtor

20 will be entitled to during the year. Thus, at this time, the Debtor cannot estimate the

21 amount of tax liabilities that will be incurred.

22         **III.  EFFECT OF CONFIRMATION OF PLAN**

23 **A.    Discharge**

24     Except as otherwise specifically provided in the Plan or in the Confirmation Order,

25 pursuant to Section 1141(d) of the Bankruptcy Code, the distributions and rights that are

26 provided in the Plan will be in complete satisfaction, discharge and release, effective as of

27 the Effective Date, of all Claims, whether known or unknown, Liens, rights against,

28 obligations, liabilities of, and Interests in the Debtor, and any of their assets or properties,

1  regardless of whether any property will have been distributed or retained pursuant to the

2  Plan on account of such Claims, rights and Interests, including but not limited to, Claims

3  and Interests that arose before the Confirmation Date, including all debts of the kind

4  specified in Section 502(g), 502(h) and 502(i) of the Bankruptcy Code, in each case

5  whether or not (i) a Proof of Claim or Proof of Interest based upon such Claim or Interest

6  is filed or deemed filed under Section 501 of the Bankruptcy Code, (ii) such Claim or

7  Interest is allowed under Section 502 of the Bankruptcy Code, or (iii) the holder of such

8  Claim or Interest accepted the Plan.  The Confirmation Order will constitute a

9  determination of the discharge of all of the Claims against and Interests in the Debtors,

10  subject to the occurrence of the Effective Date.

11       Nothing contained herein shall limit the effect of confirmation as described in

12  Sections 524 and/or 1141 of the Bankruptcy Code.

13  **B.**   **Vesting of Title**

14       Except as provided in the Plan, the confirmation of the Plan revests all of the

15  property of the Estate in Debtor which will be immediately transferred to the Reorganized

16  Debtor under the exclusive direction and control of the Disbursing Agent. After the

17  Confirmation Date, the disposition of any assets in the possession of the Disbursing Agent

18  whether by sale, settlement or otherwise, shall not be subject to or require Court approval.

19       Except as set forth in the Plan to the contrary, on the Effective Date, the property of

20  the Estate will vest in Debtor and transferred to the Reorganized Debtor and the

21  Disbursing Agent free and clear of any Claims, liens, encumbrances, or interests of

22  Creditors, Interest Holders, parties-in-interest, and other entities.

23       From and after the Effective Date, the Disbursing Agent may acquire, and dispose

24  of property and settle and compromise claims without supervision by the Bankruptcy

25  Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than

26  restrictions expressly imposed by the Plan, the Confirmation Order, and any document,

27  agreement, or instrument delivered in connection therewith.

28

1   Except as otherwise provided in the Plan or in the Confirmation Order, the rights

2   afforded in the Plan and the treatment of all Claims in the Plan will be in exchange for and

3   in complete satisfaction, discharge, and release of all Claims (including any interest

4   accrued on any Claim from and after the Petition Date) against Debtor and any of its

5   assets and propert(ies).

6   **C.    Retention and Enforcement of Claims**

7   Pursuant to Bankruptcy Code § 1123(b)(3),  the Reorganized Debtor will succeed

8   to any and all claims, defenses, powers and interests held by the Debtor (to the extent not

9   transferred, waived, released, settled, or compromised on or before the Effective Date),

10  and the Plan expressly reserves all such claims, defenses, powers and interests to the

11  Reorganized Debtor, including without limitation, rights to object to the allowance of

12  claims, request the subordination of claims, avoid transfers of property or interests in

13  property of the Debtor, and seek recovery of property, damages, or equitable relief.

14  **D.    Default**

15  Except as otherwise provided herein or in the Confirmation Order, in the event that

16  the Reorganized Debtor shall default in the performance of any of its obligations under the

17  Plan and shall not have cured such a default within thirty (30) days after receipt of written

18  notice of default from the creditor to whom the performance is due, then the entity or

19  individual to whom the performance is due may pursue such remedies as are available at

20  law or in equity.  An event of default occurring with respect to one claim shall not be any

21  event of default with respect to any other claim.

22  **E.    Modification of Plan**

23  The Proponent may modify the Plan pursuant to 11 U.S.C.A. § 1127 (West 2004 &

24  Supp. 2006).  The Debtor, with the consent of the Court, may modify the Plan at any time

25  before confirmation.  However, the Court may require a new disclosure statement and/or

26  re-voting on the Plan.

27  The Reorganized Debtor, with consent of the Court, may also seek to modify the

28  Plan at any time after confirmation only if (1) the Plan has not been substantially

1 consummated and (2) the Court authorizes the proposed modifications after notice and a

2 hearing.

3       Nothing herein should be construed to limit Debtor's rights, including to borrow or

4 seek salary advances, seek debt forgiveness, or agree to a payment with a creditor such

5 that all claimants receive at least their treatment under this Plan.

6 **F.    Post-Confirmation Causes of Action**

7       To the best knowledge of the Proponent, the estate has the following causes of

8 action: none.

9       THE DEBTOR HAS NOT FULLY REVIEWED WHETHER POST-CONFIRMATION

10 ESTATE CLAIMS EXIST, INCLUDING, WITHOUT LIMITATION, WHETHER OR NOT

11 THERE ARE ANY AVOIDANCE ACTIONS WHICH MAY BE BROUGHT BY THE

12 REORGANIZED DEBTOR AFTER THE EFFECTIVE DATE. THIS INVESTIGATION IS

13 ON-GOING AND WILL OCCUR IN LARGE PART AFTER THE EFFECTIVE DATE, AS A

14 RESULT, CREDITORS AND OTHER PARTIES-IN-INTEREST SHOULD BE, AND ARE

15 PURSUANT TO THE TERMS OF THE PLAN, SPECIFICALLY ADVISED THAT,

16 NOTWITHSTANDING THAT THE EXISTENCE OF ANY PARTICULAR POST-

17 CONFIRMATION ESTATE CLAIM MAY NOT BE LISTED, DISCLOSED, OR SET FORTH

18 IN THE PLAN OR THE DISCLOSURE STATEMENT, A POST-CONFIRMATION ESTATE

19 CLAIM MAY BE BROUGHT AGAINST ANY CLAIMANT AT ANY TIME, SUBJECT TO

20 THE BAR DATE LIMITATIONS SET FORTH IN THE PLAN.

21       Debtor is designated as representative of the estate under 11 U.S.C.A. §

22 1123(b)(3) (West 2004) and shall have the right to assert any causes of action post-

23 confirmation or any or all of the above causes of action post-confirmation in accordance

24 with applicable law.

25 **G.    Post-Confirmation Status Report**

26       Within 180 days of the entry of the order confirming the Plan, the Reorganized

27 Debtor will file a status report with the Court explaining what progress has been made

28 toward consummation of the confirmed Plan.  The status report shall be served on the

1  United States Trustee and those parties who have requested special notice after the

2  Effective Date.  Unless otherwise ordered by the Bankruptcy Court, further status reports

3  shall be filed every 180 days and served on the same entities.

4  **H.    Post-Confirmation Conversion/Dismissal**

5          A creditor or party in interest may bring a motion to convert or dismiss the Case

6  under § 1112(b) after the Plan is confirmed if there is an uncured default in performing the

7  Plan as provided in Section V.D.  If the Court orders the Case converted to Chapter 7

8  after the Plan is confirmed, then all property that had been property of the Chapter 11

9  estate, and that has not been disbursed pursuant to the Plan will revest in the Chapter 7

10 estate.  The automatic stay will be reimposed upon the revested property, but only to the

11 extent that the Court did not previously authorize relief from stay during the Case.  The

12 order confirming the Plan may also be revoked under very limited circumstances.  The

13 Court may revoke the order if the order of confirmation was procured by fraud and if the

14 party in interest brings an adversary proceeding to revoke confirmation within 180 days

15 after the entry of the order of confirmation.

16 **I.    Post-Confirmation U.S. Trustee Fees**

17         The Reorganized Debtor shall be responsible for timely payment of all fees

18 incurred on or after the Effective Date pursuant to 28 U.S.C. Section 1930(a)(6).  The

19 Reorganized Debtor will file all reports required by the OUST in connection with payment

20 of such fees.  28 U.S.C. § 1930.

21 **J.    Final Decree**

22         Once the Estate has been fully administered as referred to in Federal Rule of

23 Bankruptcy Procedure 3022, or substantially consummated or as otherwise applicable

24 and provided by law, the Plan Proponent, or such other party as the Court shall designate

25 in the Plan confirmation order, shall file a motion with the Bankruptcy court to obtain a final

26 decree to close the case.

27

28

Dated:  July 13, 2021

Respectfully submitted,


By: _____

Byron Moles, President


Presented by:

LESLIE COHEN LAW, PC


By:    /s/ Leslie A. Cohen
Leslie A. Cohen
Attorneys for Debtor and Plan Proponent

## EXHIBIT "A" – CLAIMS

| Name | Scheduled Secured Claim Amt | Scheduled General Unsecured Claim Amt | Scheduled as Disputed, Unliquidated and/or Contingent | Proof of Claim No. | Claimed Admin | Claimed Amount Secured | Claimed Amount Priority | Claimed Amount GUC | Proposed Allowed Secured Claim | Proposed Allowed Priority Tax Claim | Proposed Allowed Priority Claim | Proposed Allowed Hybrid Claim | Proposed Allowed General Unsecured Claim | CURE COSTS TO BE PAID ON EFFECTIVE DATE | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ace Funding | $ 172,372.22 | | Disputed | | | | | | | | | | $ | | DISPUTED; NO CLAIM FILED |
| Allen & Kimbell LLP | | $15,411.85 | | 54-1 | | | | $17,379.10 | | | | | $ 17,379.10 | | |
| Alpha Capital | $ 140,387.75 | | Disputed | 22-1 | | $ 135,047.94 | | | | | | | $ 135,047.94 | | OBJECTION PENDING |
| AmTrust North America | | $24,625.79 | | 23-1 | | | | $24,625.79 | | | | | $ 24,625.79 | | |
| Andrew Bebee | | $11,000.00 | | | | | | | | | | | $ 11,000.00 | | |
| Apex Fire Control Services Inc. | | $569.47 | | | | | | | | | | | $ 569.47 | | |
| Bank of the Sierra | | $353,250.00 | | 11-1 | | | | $355,383.01 | | | | | | | |
| Barry McLamb | | $20,000.00 | | | | | | | | | | | $ 20,000.00 | | |
| Benuck & Rainey | | $8,464.93 | Disputed | | | | | | | | | | $ - | | |
| Biz Fund LLC | $ 92,412.62 | | Disputed | | | | | | | | | | $ - | | DISPUTED; NO CLAIM FILED |
| Bobby L. and Barbara A. Rollins | | | | 38-1 | | | | $4,000.00 | | | | | $ 4,000.00 | | OBJECTION PENDING |
| BSG Craft Brewing | | $40,917.01 | Disputed | 2-1 | | | | $42,679.01 | | | | | $ 42,679.01 | | |
| Business Merchants | $ 132,133.69 | | Disputed | | | | | | | | | | $ - | | DISPUTED; NO CLAIM FILED |
| CA Dept of Tax and Fee Sales Tax and Manufacturing Tax (priority) | | Unknown | | 59-1 | | | $252,714.43 | | | $ 252,714.43 | | | | | |
| Caine & Weiner | | $27,168.66 | | | | | | | | | | | $ 27,168.66 | | |
| Cal Recycle | | $8,132.97 | | 58-1 | | | | $8,253.53 | | | | | $ 8,253.53 | | |
| Calvin Chan | | $10,000.00 | | 37-1 | | | | $22,000.00 | | | | | $ 22,000.00 | | |
| City of Santa Maria | | $4,895.50 | | 30-1 | | | | $4,809.55 | | | | | $ 4,809.55 | | |
| Clyde & Pauline Hernandez | | $200,000.00 | | 46-1 | | | | $214,101.85 | | | | $ 214,101.85 | | | |
| Complete Business Solutions Group Inc | $ 202,940.03 | | Disputed | 60-1 | | | | $202,717.73 | | | | | $202,717.73 | | OBJECTION PENDING |
| Compwest Insurance | | $24,371.00 | | | | | | | | | | | $ 24,371.00 | | |
| Corrine and Hilal Helweh | | $350,000.00 | | | | | | | | | | $ 350,000.00 | | | |
| Corrine Helweh | | $20,000.00 | | | | | | | | | | | $ 20,000.00 | | |
| Credit Control LLC | | $11,260.05 | | | | | | | | | | | $ 11,260.05 | | |
| Dan Sheehy | | $99,000.00 | | 36-1 | | | | $105,000.00 | | | | | $ 105,000.00 | | |
| Darlene and Joe Torrez | | | | 51-1 | | | | $500.00 | | | | | $ 500.00 | | OBJECTION PENDING |
| Darrell Anderson | | Unknown | | | | | | | | | | | $ - | | LEASE BEING ASSUMED |
| Dean Siegrist | | $54,000.00 | | 10-1 | | | | $60,000.00 | | | | | $60,000.00 | | |
| Demetrios Pettas | | $100,000.00 | | 56-1 | | | | $107,000.00 | | | $107,000.00 | | | | |
| Dennis Shaleen | | $1,000.00 | | 21-1 | | | | $1,000.00 | | | | | $ 1,000.00 | | OBJECTION PENDING |
| Dionysios Pettas | | $215,000.00 | | 44-1 | | | | $364,500.00 | | | | $364,500.00 | | | |
| Distrimatics USA | | $3,145.71 | | | | | | | | | | | $3,145.71 | | |
| Don Glessinger | | $48,150.00 | | | | | | | | | | | $48,150.00 | | |
| Don Sylvester | | $650,700.00 | | | | | | | | | | | $650,700.00 | | |
| Donald and Mary Jane Giessinger Living Trust | | $50,000.00 | | | | | | | | | | $50,000.00 | | | |
| Donald Andrew Giessinger & Mary Jane Living Trust | | $50,000.00 | | | | | | | | | | | | | OBJECTION PENDING (Duplicate) |
| Double Eagle Investments | | $28,000.00 | Disputed | 6-1 | | | | $103,872.41 | | | | | | $103,872.41 | LEASE BEING ASSUMED |
| Ekos | | $1,587.00 | | | | | | | | | | | $1,587.00 | | |
| Employment Development Department | $ 183,348.33 | | | 15-1 | | | $149,250.05 | $46,304.79 | $ 149,250.05 | | | | $ 46,304.79 | | |
| Employment Development Department | | | | 34-1 | $9,894.48 | | | | | | | | | | PAID PRIOR TO EFFECTIVE DATE |
| Equity Trust Co fbo Larry Price | | $14,106.01 | | 25-1 | | | | $12,722.00 | | | | | $ - | $12,722.00 | LEASE BEING ASSUMED |
| Equity Trust Co fbo Larry Price | | | | 32-1 | | | | $12,722.00 | | | | | $ - | | (Duplicate) |
| Fiero Lane Water Co | | $14,752.69 | | 8-1 | | | | $14,752.69 | | | | | $14,752.69 | | |
| Franchise Tax Board (priority) | | $1,600.00 | | 5-1 | | | $1,697.54 | $60.50 | | $ 1,697.54 | | | $ 60.50 | | |
| Gabriel Architects | | $27,165.87 | | | | | | | | | | | $27,165.87 | | |

| Name | Scheduled Secured Claim Amt | Scheduled General Unsecured Claim Amt | Scheduled as Disputed, Unliquidated and/or Contingent | Proof of Claim No. | Claimed Admin | Claimed Amount Secured | Claimed Amount Priority | Claimed Amount GUC | Proposed Allowed Secured Claim | Proposed Allowed Priority Tax Claim | Proposed Allowed Priority Claim | Proposed Allowed Hybrid Claim | Proposed Allowed General Unsecured Claim | CURE COSTS TO BE PAID ON EFFECTIVE DATE | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| George Wake | | $28,000.00 | | | | | | | | | | | $28,000.00 | | |
| Grand Ealy | | | | 52-1 | | | | $4,000.00 | | | | | $ 4,000.00 | | OBJECTION PENDING |
| Gregory A Palte | | $20,500.00 | | 18-1 | | | | $25,500.00 | | | | | $25,500.00 | | |
| Gregory D Rodriguez AKA Cynthia Mason Rodriguez | | | | 48-1 | | | | $1,000.00 | | | | | $ 1,000.00 | | OBJECTION PENDING |
| Harbor Distributing, LLC | | $1,350.00 | | | | | | | | | | | $1,350.00 | | |
| Industrial Broiler Service Inc | | $2,100.00 | | | | | | | | | | | $2,100.00 | | |
| Internal Revenue Service | | | | 14-2 | | $ 820,703.08 | $982,087.66 | $380,701.17 | $ 820,703.08 | $ 982,087.66 | | | $ 380,701.17 | | |
| Jackie Seehof | | $50,000.00 | | | | | | | | | | $50,000.00 | | | |
| James Carter | | $50,000.00 | | 20-1 | | | | $100,000.00 | | | | $100,000.00 | | | |
| JB Dewar | | $604.21 | | 12-1 | | | | $604.21 | | | | | $604.21 | | |
| Jeff Cambell | | $2,072,000.00 | Disputed | 9-1 | | | | $2,673,420.71 | | | | | | | (Duplicate) |
| Jeff Campbell | | | | 35-1; 35-2 | | | | $2,873,420.71 | | | | | $2,873,420.71 | | OBJECTION PENDING |
| Jerad Webb | | $25,000.00 | | | | | | | | | | | $25,000.00 | | |
| Jill Cobb | | $101,685.00 | | | | | | | | | | | $101,685.00 | | |
| Joel Clay | | $50,000.00 | | | | | | | | | | $50,000.00 | | | |
| John & Denise Nielsen | | $100,000.00 | | 45-1 | | | | $107,500.00 | | | | $107,500.00 | | | |
| John Fearless | | $1,613.83 | | | | | | | | | | | $1,613.83 | | |
| Josh Ryun | | $40,000.00 | | | | | | | | | | | $40,000.00 | | scheduled as John Ryun |
| Joseph & Heather Witts | | $300,000.00 | | | | | | | | | | $300,000.00 | | | |
| Joseph Bertao | | $23,650.09 | | 42-1 | | | $29,500.00 | $520,500.00 | | | $ 13,650.00 | $ 520,500.00 | $ 23,650.00 | | OBJECTION PENDING |
| Joseph Bertao | | $300,000.00 | | | | | | | | | | | | | SEE ABOVE |
| Kash Capital | $ 139,918.75 | | Disputed | | | | | | | | | | $ - | | DISPUTED; NO CLAIM FILED |
| Keg Logistics | $ 60,038.00 | | | 47-1 | | | | $62,294.00 | | | | | $ - | $ 62,294.00 | LEASE BEING ASSUMED |
| Keith and Ruth Moles | | $241,190.78 | | | | | | | | | | | $241,190.78 | | |
| Kump Family Trust | | $68,200.00 | | 39-1 | | | | $375,427.00 | | | $ 55,000.00 | | $ 375,427.00 | | |
| Kyle Leverett | | $50,000.00 | | 28-1 | | | | $75,000.00 | | | | $75,000.00 | | | |
| Lance Neblett | | $5,000.00 | | 53-1 | | | | $5,000.00 | | | | | $5,000.00 | | |
| Landsberg Orora Inc. | $ 587,312.01 | | Disputed | 13-1 | | $ 608,099.00 | | | | | | | $ 608,099.00 | | SETTLED; approval pending |
| Linda Smith | | $5,000.00 | | | | | | | | | | | $5,000.00 | | |
| Loan Me | | $56,484.00 | | | | | | | | | | | $56,484.00 | | |
| Mark Jordan | | | | 31-1 | | | | $2,500.00 | | | | | $ 2,500.00 | | OBJECTION PENDING |
| Michael & Marrianne McCormick | $ 500,000.00 | | | 41-1 | | $ 409,240.86 | | | $ 409,240.86 | | | | | | |
| Michael & Marrianne McCormick | $ 10,000.00 | | | | | | | | $ 10,000.00 | | | | | | |
| Michael Early | | $166,767.00 | Disputed | 4-1, 4-2 | | | | $166,767.69 | | | | | $ - | | stipulation to withdraw claim and objection forthcoming |
| Michael Fish | | $1,300.00 | | | | | | | | | | | $1,300.00 | | |
| Michael Fish | | $9,400.00 | | | | | | | | | | | $9,400.00 | | |
| Michael Siegrist | | | | 33-1 | | | | $1,000.00 | | | | | $ 1,000.00 | | OBJECTION PENDING |
| Mid-Coast Fire Protection Inc | | $378.54 | | | | | | | | | | | $378.54 | | |
| Mike and Tammy Payne | | $100,000.00 | | 19-1 | | | | $100,000.00 | | | | $100,000.00 | | | |
| Mussetter Distributing Inc. | | $9,926.10 | | | | | | | | | | | $9,926.10 | | |
| Pacific Petroleum California | | $24,929.47 | Contingent, Unliquidated, Disputed | 49-1 | | | | $26,531.37 | | | | | $26,531.37 | | |
| Paragon Insurance Holdings | | $563.50 | | | | | | | | | | | $563.50 | | |
| Paso Robles Water and Sewer | | $1,358.89 | | 26-1 | | | | $1,358.59 | | | | | $1,358.59 | | |
| Paul Ready | | Unknown | | 24-1 | | | | $17,402.20 | | | | | $17,402.20 | | |
| Pensco Trust Co | | $75,000.00 | | | | | | | | | | | $75,000.00 | | OBJECTION PENDING |
| PG&E | | $59,291.43 | | | | | | | | | | | $59,291.43 | | |
| PG&E | | $3,189.89 | | | | | | | | | | | $3,189.89 | | |
| PG&E | | $16,994.68 | | | | | | | | | | | $16,994.68 | | |
| PG&E | | $1,716.00 | | | | | | | | | | | $1,716.00 | | |
| PG&E | | $13,027.12 | | | | | | | | | | | $13,027.12 | | |
| PG&E | | $21,558.08 | | | | | | | | | | | $21,558.08 | | |
| Phillip Bennie | | $39,500.00 | | | | | | | | | | | $39,500.00 | | |
| Power Machinery Center | | $4,219.47 | | | | | | | | | | | $ 4,219.47 | | OBJECTION PENDING |

| Name | Scheduled Secured Claim Amt | Scheduled General Unsecured Claim Amt | Scheduled as Disputed, Unliquidated and/or Contingent | Proof of Claim No. | Claimed Admin | Claimed Amount Secured | Claimed Amount Priority | Claimed Amount GUC | Proposed Allowed Secured Claim | Proposed Allowed Priority Tax Claim | Proposed Allowed Priority Claim | Proposed Allowed Hybrid Claim | Proposed Allowed General Unsecured Claim | CURE COSTS TO BE PAID ON EFFECTIVE DATE | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Prospero / Associated Wine Systems | $ 87,000.00 | | | 16-1 | | $ 102,727.74 | | $1,552.95 | $ 102,727.74 | | | | $ 1,552.95 | | |
| Randy Melcombe | | | | 57-1 | | | $1,000.00 | | | | | | $ 1,000.00 | | OBJECTION PENDING |
| Reeds Heating | | $7,800.00 | | | | | | | | | | | $7,800.00 | | |
| Richard McCarthy | | $49,800.00 | | 17-1 | | | | $115,000.00 | | | | $115,000.00 | | | |
| Richard McCarthy | | $50,000.00 | | | | | | | | | | | | | |
| Rodney Quita Martinez | | $100,000.00 | | | | | | | | | | $100,000.00 | | | |
| S Carlson's Plumbing, Inc. | | $17,534.49 | | | | | | | | | | | $17,534.49 | | |
| San Luis Glass & Window | | Unknown | | | | | | | | | | | | | |
| San Luis Obispo County Tax Collector | $ 4,456.64 | | | 27-1 | | $ 9,381.92 | $5,576.08 | | $ 9,381.92 | $ 5,576.08 | | | | | |
| Santa Barbara County Tax Collector | $ 11,865.51 | | | 40-1 | | | $12,248.52 | | | $ 12,248.52 | | | | | |
| Santa Barbara Land Co LLC | | $145,395.07 | Disputed | 43-1 | | | | $146,211.92 | | | | | $ 146,211.92 | | OBJECTION PENDING |
| Saxco International LLC | | $73,637.09 | Disputed | | | | | | | | | | $ - | | DISPUTED; NO CLAIM FILED |
| Sean Knoph | | $235,000.00 | | 50-1 | | | | $435,000.00 | | | | $ 200,000.00 | $ 235,000.00 | | Filed as 1 claim |
| Sean Knoph | | $200,000.00 | | | | | | | | | | | | | SEE ABOVE |
| Sequential | | $625.00 | | | | | | | | | | | $625.00 | | |
| SoCalGas | | $14,940.56 | | 7-1 | | | | $15,522.06 | | | | | $15,522.06 | | Filed as 1 claim |
| SoCalGas | | $2,503.54 | | | | | | | | | | | | | see above |
| SoCalGas | | $1,857.17 | | | | | | | | | | | | | see above |
| SPG Advance | | $188,935.00 | Contingent, Unliquidated, Disputed | | | | | | | | | | $ - | | DISPUTED; NO CLAIM FILED |
| Square | | $43,112.38 | Contingent, Unliquidated, Disputed | 3-1 | | | | $43,824.40 | | | | | $ 43,824.00 | | OBJECTION PENDING |
| Stanley Convergent Alarm | | $9,846.19 | | | | | | | | | | | $9,846.19 | | |
| Stanley Convergent Alarm | | Unknown | | | | | | | | | | | | | SEE ABOVE |
| Stanley Convergent Alarm | | Unknown | | | | | | | | | | | | | SEE ABOVE |
| Star Drug Testing Inc. | | $441.00 | | | | | | | | | | | $441.00 | | |
| Stephen Siemsen | | $110,000.00 | | | | | | | | | | $110,000.00 | | | |
| Steve Golis | | $146,000.00 | | 29-1 | | | | $450,000.00 | | | | $ 450,000.00 | | | |
| Steve Mussack | | $280,000.00 | | 1-1 | | | | $425,099.00 | | | | $ 55,500.00 | $ 425,099.00 | | SETTLED |
| Tognazzini Beverage Service | | $8,032.78 | | 55-1 | | | | $8,215.00 | | | | | $8,215.00 | | |
| Unique Funding | $ 162,041.58 | | Disputed | | | | | | | | | | $ - | | DISPUTED; NO CLAIM FILED |
| US Department of Treasury Alcohol and Tobacco Tax and Trade Bureau | | | | 61-1 | | | $7,498.80 | $2,474.35 | | $ 7,498.80 | | | $ 2,474.35 | | |
| Wayne Nix | | $18,050.00 | | | | | | | | | | | $18,050.00 | | |
| Yellowstone Capital | $ 224,437.45 | | Disputed | | | | | | | | | | $ - | | DISPUTED; NO CLAIM FILED |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | $2,710,664.58 | $8,332,282.86 | | | $ 9,894.48 | $ 2,085,200.54 | $1,440,573.08 | $10,888,211.29 | $1,352,053.60 | $1,411,073.08 | $13,650.00 | $3,474,101.85 | $7,572,127.02 | $178,888.41 | |

* All claims that are the subject of pending claim objections have been included at their full claimed amount, except for those claims which the Debtor objected to as duplicates and the forgiven PPP loan with Bank of the Sierra.

## EXHIBIT "B" – HYBRID CLAIMS

**CLASS 8 HYBRID CLAIMANTS**

| CLAIMANT | EQUITY SHARES IF CREDITOR ELECTS TO WAIVE CLASS 9 GENERAL UNSECURED CLAIM | GENERAL UNSECURED CLAIM AMOUNT IF CREDITOR ELECTS TO BE INCLUDED IN CLASS 9 IN LIU OF RETAINING SHARES |
|---|---|---|
| Clyde & Pauline Hernandez | 200,000 | $ 214,101.85 |
| Corrine and Hal Helweh | 350,000 | $ 350,000.00 |
| Demetrios Pettas | 125,000 | $ 107,000.00 |
| Dionysios Pettas | 380,000 | $ 364,500.00 |
| Donald Giessinger | 50,000 | $ 50,000.00 |
| Jackie Seehof | 60,000 | $ 50,000.00 |
| James Carter | 50,000 | $ 100,000.00 |
| Joel Clay | 60,000 | $ 50,000.00 |
| John & Denise Nielsen | 100,000 | $ 107,500.00 |
| Joseph & Heather Witts | 300,000 | $ 300,000.00 |
| Joseph Bertao | 300,000 | $ 520,500.00 |
| Kyle Leverett | 75,000 | $ 75,000.00 |
| Mike & Tammy Payne | 100,000 | $ 100,000.00 |
| Richard McCarthy | 55,000 | $ 115,000.00 |
| Robert & Marguerite Kump | 60,000 | $ 55,000.00 |
| Rodney Martinez | 100,000 | $ 100,000.00 |
| Sean Knoph | 250,000 | $ 200,000.00 |
| Stephen Siemsen | 160,000 | $ 110,000.00 |
| Steve Golis | 245,000 | $ 450,000.00 |
| Steve Mussack | 75,000 | $ 55,500.00 |
| TOTAL | 3,095,000 | $ 3,474,101.85 |

## EXHIBIT "C" – STOCKHOLDERS

**TOTAL SHARES PER PERSON**
(* indicates Class 8 hybrid equity/claim holder)

| | |
|---|---:|
| Adrian & Zaira Ramirez | 400 |
| Adrian Valdez | 300 |
| Alejandro Nava | 5,000 |
| Alfredo Lopez | 2,500 |
| Alice Tse | 300 |
| Amanda McBride | 500 |
| Andrew Crisp | 100 |
| Anita Sahagun | 2,000 |
| Antonio Magana | 100 |
| Baltazar Magana | 1,000 |
| Barbara McDaniel | 100 |
| Beau Kramer | 5,000 |
| Ben & Linda Dalberg | 300 |
| Bijan Hardison | 300 |
| Bobby L Rollins or Barbara A Rollins | 4,000 |
| Brent & Nicole Wallingford | 2,500 |
| Bryan Fortin | 53,000 |
| Bryan Sanders | 10,000 |
| Bryce Rodroguez | 300 |
| Byron & Karen Moles | 1,206,234 |
| Cameron Inverson | 250 |
| Carlos Rosas | 300 |
| Chadwick Frandsen | 5,000 |
| Charles & Beth Hice | 5,000 |
| Christi Rodriguez | 1,000 |
| Christina Lagrimas | 500 |
| Christine Chase | 100 |
| Christine Freytag | 300 |
| Christine Steiner | 10,000 |
| Christopher & Terri Salazar | 100 |
| Christopher Border | 100 |
| Clayton & Shannon Gambril | 1,000 |
| Clyde & Pauline Hernandez* | 200,000 |
| Corrine and Hal Helweh* | 350,000 |
| Crystal Garcia | 500 |
| Daniel & Melissa Sessions | 5,000 |
| Daniel Lehman | 100 |
| Daniel Rizzo | 2,500 |
| Daniel Sahagun | 4,500 |
| Daniel Sheridan | 2,500 |
| David & Cynthia Fortin | 2,000 |

| | |
|---|---:|
| David R Oliver | 100 |
| Dawn Locklear & Jim Schwartz | 300 |
| Dean Siegrist Trust | 5,000 |
| Demetrios Pettas* | 125,000 |
| Dennis or Sue Shaleen | 1,000 |
| Dillion Ochoa | 300 |
| Dina Perry-Anna Riccio | 100 |
| Dionysios Pettas* | 380,000 |
| Don & Darci Buliavac | 100 |
| Donald Giessinger * | 50,000 |
| Doug &/or Raye Burkhardt | 500 |
| Doug Gyll & Natalie Taylor | 300 |
| Doug McRoberts | 4,000 |
| Earl Rhodes | 100 |
| Edward Bowsfield | 100 |
| Edward Manfredi | 100 |
| Elijio Hernandez | 2,500 |
| Elizabeth Walling | 200 |
| Eric Sullender | 100 |
| Erich Gross | 5,000 |
| Ernie Cuello | 2,500 |
| Eva P Sterzey | 2,440 |
| Flavio Rodriguez | 600 |
| Frank & Donna Flores | 5,000 |
| Frank Toves | 500 |
| Gail Roemling | 100 |
| Garold & Justine Shaffer | 100 |
| Gary & Bethelle Gillesby | 300 |
| Gary Paul Smith | 500 |
| Geoff Delahanty | 100 |
| George Demetruk | 5,000 |
| George M Norton | 1,500 |
| George Wake | 21,250 |
| Gloria Zarate | 300 |
| Grand Ealy & Elaine Ealy | 4,000 |
| Greg & Wendy Saunders | 3,000 |
| Greg Hartt | 1,000 |
| Gregory A & Lori C Palte | 71,000 |
| Gregory D Rodriguez OR Cynthia Mason Rodriguez | 1,000 |
| Heather Speer | 1,500 |
| Jack Luepke | 2,000 |
| Jackie Seehof* | 60,000 |
| James Andrews | 100 |
| James Bendele | 300 |
| James Border | 1,100 |

| | |
|---|---:|
| James Carter* | 50,000 |
| James Fletcher | 2,000 |
| Jeff Stiarwalt | 1,000 |
| James Wilson | 5,000 |
| Janet Steiniger | 1,100 |
| Jeff & Adrianne Campbell | 1,124,766 |
| Jeffrey Brown | 1,000 |
| Jeffrey Duane Newberry | 300 |
| Jerry & Janyce Salazar | 1,100 |
| Jesse Machado | 100 |
| Jill Stivers | 300 |
| Joe & Darlene Torrez | 500 |
| Joel Clay* | 60,000 |
| John & Denise Nielsen* | 100,000 |
| John & Jean Malloy | 1,000 |
| John & Katherine Benedetti | 1,000 |
| John Defosse | 5,000 |
| John Hall | 1,000 |
| John L Maloy | 250 |
| John Sherer | 100 |
| Jorge Espinoza | 4,000 |
| Joseph & Heather Witts* | 300,000 |
| Joseph & Sarah Nemeth | 2,500 |
| Joseph A Leos | 2,000 |
| Joseph Allegretto | 300 |
| Joseph Bertao* | 300,000 |
| Juan Sanchez | 300 |
| Karina Arroyo | 1,000 |
| Karina Lua & Juan Carlos | 2,000 |
| Katherine Fausel | 300 |
| Katherine Rizzo | 300 |
| Kathleen Broemmelsiek | 1,000 |
| Keith Cox | 100 |
| Kenneth McDaniel | 100 |
| Kenneth Miller | 5,000 |
| Kenneth Peterson | 1,000 |
| Kenny Han Jin Cai | 300 |
| Kerry McElhiney & Thomas Aquino | 4,000 |
| Kimberly Salazar | 100 |
| Kyle Leverett* | 75,000 |
| Laban & Dena Aragon | 600 |
| Lance Neblett | 4,590 |
| Lauro & Shanna Garcia | 3,000 |
| Lester Neblett & Peter Nikolov | 2,500 |
| Linda Smith | 20,000 |

| | |
|---|---:|
| Lisa & Adam Shuffield | 300 |
| Liz Chavez | 300 |
| Lori Kastner | 5,000 |
| Maloys Insurance | 600 |
| Maniel Ibarra | 400 |
| Marco Cortez | 100 |
| Maria Mosqueda | 300 |
| Mario Mosqueda | 300 |
| Mark Borjon | 5,000 |
| Mark Hongo | 1,100 |
| Mark Jordan | 2,500 |
| Mark McNutt | 1,000 |
| Mark Raymond | 2,100 |
| Mason Turner | 50,000 |
| Mauro Bravo | 300 |
| Meghan Parsley | 500 |
| Michaelangelo Michel | 100 |
| Michele Ann Newberry | 300 |
| Mike & Marianne McCormick | 552,500 |
| Mike & Rhonda Clark | 300 |
| Mike & Tammy Payne* | 100,000 |
| Mike Siegrist | 1,000 |
| Mitchell Garcia and Cheryl Burgess | 10,000 |
| Nancy Zaragoza | 300 |
| Nga Kuan Fong | 300 |
| Nicholas Patterson & Gerald Patterson | 1,500 |
| Omar Vargas | 1,500 |
| Omeed Farokhiazar | 3,000 |
| Pasqual Michel | 250 |
| Paul Olivas | 5,000 |
| Peter Christensen | 300 |
| Phillip Bennie | 24,000 |
| Preston & Sara Vogt | 5,000 |
| Rafael Mosqueda | 100 |
| Randall Dworaczyk | 1,000 |
| Randy & Rhonda Salmon | 100 |
| Randy Melcombe | 1,000 |
| Rebecca Trott | 400 |
| Richard Cuello | 400 |
| Richard McCarthy* | 55,000 |
| Richard Pike | 50,000 |
| Richard Solis | 1,000 |
| Richard Treinen | 1,500 |
| Robert & Marguerite Kump* | 60,000 |
| Robert & Patricia OConnell | 3,000 |

| | |
|---|---:|
| Robert Fargo | 1,000 |
| Robert J Strickland & Sharon L Strickland | 12,000 |
| Robert Lawrence | 300 |
| Robert Lozon II | 600 |
| Rodney Martinez* | 100,000 |
| Rogelio Teniente | 400 |
| Roxanne Ornelaz | 100 |
| Rudolph D'Souza | 1,000 |
| Samantha Thompson | 500 |
| Santos Rosas Jr | 300 |
| Sean Knoph * | 250,000 |
| Staci Andrews | 100 |
| Stephen Iverson | 500 |
| Stephen Siemsen* | 160,000 |
| Steve Golis* | 245,000 |
| Steve Mussack* | 75,000 |
| Steve Mussack | 212,000 |
| Steven Finn | 2,000 |
| Stirling Iverson | 250 |
| The Sheehy Trust | 250,000 |
| The Stump Family Trust | 5,000 |
| Thomas & Debora Agayoff | 1,000 |
| Thomas & Laurie Zuur | 2,000 |
| Thomas Mounts | 300 |
| Tim Kreiss | 2,000 |
| Tony Quezada | 5,000 |
| Trinidad Hernandez | 3,000 |
| Ulysses | 100 |
| William Timothy Savey | 500 |
| | 7,008,780 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
                    506 Santa Monica Blvd., Suite 200, Santa Monica, CA 90401
A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S CHAPTER 11 PLAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  ___7/13/21___ , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Hagop T Bedoyan    hagop.bedoyan@mccormickbarstow.com, terry.douty@mccormickbarstow.com
Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;olivia@lesliecohenlaw.com
Jamie P Dreher    jdreher@downeybrand.com, mfrazier@downeybrand.com;courtfilings@downeybrand.com
Lori L Enrico    lori@giannettaenrico.com, melanie@giannettaenrico.com
Brian D Fittipaldi    brian.fittipaldi@usdoj.gov
Alan Craig Hochheiser    ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
Sandra McBeth    donna@mcbethlegal.com
Kenneth Misken    Kenneth.M.Misken@usdoj.gov
Paul F Ready    tamara@farmerandready.com
United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov
Larry D Webb    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com    ☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)  ___7/13/21___ , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Deborah Saltzman
U.S. Bankruptcy Court
255 E. Temple Street
Los Angeles, CA 90012

Office of United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

                                        ☐  Service information continued on attached pages

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

                                        ☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 7/13/21 | Olivia Hill | /s/ Olivia Hill |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                        **F 9013-3.1.PROOF.SERVICE**